UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAT, INC., et al,

       Plaintiffs,

v.

NATIONAL CITY BANK OF THE MIDWEST
and NATIONAL CITY CORP.,

       Defendants.
                                              /

Case No. 06-11937

Honorable Nancy G. Edmunds

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS IN PART AND DENYING DEFENDANTS' MOTION TO DISMISS IN PART [10]**

This matter came before the Court on Defendant National City Bank of the Midwest's and Defendant National City Corporation's motion to dismiss, filed on August 14, 2006. National City and NCC are collectively referred to as Defendants. Plaintiffs[1] JAT, Inc. ("JAT"), Body of Christ Christian Center ("Body of Christ"), Good Fight of Faith Ministry ("Good Fight"), Pleasant Hill Baptist Church ("Pleasant Hill"), Samaritan Baptist Church ("Samaritan"), 3M Contracting, Inc. ("3M"), and Phillip Peake (collectively, "Plaintiffs") brought suit against Defendants alleging violations of several federal anti-discrimination

---

[1] Plaintiffs JAT, Pleasant Hill, Peake and New Galilee Missionary Church ("New Galilee") filed their original Complaint on April 24, 2006. New Galilee voluntarily dismissed its claims against Defendants on June 13, 2006, and the current plaintiffs filed an Amended Complaint on July 31, 2006 to add Body of Christ, Good Fight, Samaritan and 3M as additional plaintiffs. (Defs.' Mot. to Dismiss at 1-2.) Any reference to the Complaint in this opinion refers to the Amended Complaint.

1

laws related to Defendants' alleged policies of "redlining"[2] against African-American-owned businesses in the city of Detroit with regards to commercial loans. Plaintiffs also claim that this case is properly brought as a class action, although there is no motion on that issue at the present time. Specifically, Plaintiffs allege violations of (1) the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601-19, (2) the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §§ 1691-1691f, and (3) the Civil Rights Acts of 1866 and 1870 ("CRA"), 42 U.S.C. §§ 1981 and 1982.

Defendants argue that (1) the FHA only applies to residential real estate transactions, and none of the alleged loan applications concerned residential real estate, (2) not all plaintiffs meet the ECOA statutory requirement that they actually applied for credit, (3) the ECOA's statute of limitations has run with respect to some plaintiffs, (4) Plaintiffs do not plead intentional discrimination as required by the CRA, and (5) Plaintiffs' allegations of discriminatory action by Defendants is merely conclusory speculation and not supported by government statistics.

Being fully advised in the premises, having read the pleadings, and for the reasons set forth above, the Court hereby orders as follows:

Defendant National City Bank of the Midwest's and Defendant National City Corporation's motion to dismiss is GRANTED IN PART and DENIED IN PART.

## I. FACTS

A brief summary of the parties is necessary before moving on to the substantive

---

[2]"Credit discrimination (usu[ally] unlawful discrimination) by a financial institution that refuses to make loans on properties in allegedly bad neighborhoods." *Black's Law Dictionary* 1283 (7th ed. 1999).

facts of this case.  Plaintiff JAT is an African-American-owned travel business specializing in charter motor coach service throughout the U.S. and Canada that is located in Redford, Michigan.  (Compl. ¶ 3; Defs.' Mot., Ex. 3.)  JAT applied for a commercial loan from Defendant Bank in 2005, but the application was denied.  JAT subsequently obtained a loan from Bank One at a higher rate of interest.  (Compl. ¶ 3.)

Plaintiff Body of Christ is a church located in Detroit with a predominantly African-American congregation.  Body of Christ applied for a commercial loan from Defendant Bank,[3] but the application was denied.  Body of Christ subsequently obtained the loan from Bank One.  (Compl. ¶ 4.)

Plaintiff Good Fight is a church located in Wayne County, outside of Detroit, with a predominantly African-American congregation and an African-American pastor.  Good Fight applied for a commercial real estate loan from Defendant Bank in 2006 to purchase property within the city of Detroit to be used for a church.  Bank requested additional information and delayed on approving the loan, so Good Faith obtained a loan in the same amount from another bank.  Due to Bank's delay, however, another buyer bought the property that Good Fight was interested in.  (Compl. ¶ 5.)

Plaintiff Pleasant Hill is a church located in Detroit with a predominantly African-American congregation.  Pleasant Hill applied for a commercial loan from Defendant Bank, but Bank did not grant the loan.[4]  Pleasant Hill subsequently obtained a loan from Bank One in the same amount as the one sought from Defendant Bank.  (Compl. ¶ 6.)

---

[3]Plaintiffs do not state when Body of Christ applied for this loan.

[4]Plaintiffs do not state when Pleasant Hill applied for this loan.

Plaintiff Samaritan is a church located in Detroit with a predominantly African-American congregation. Samaritan applied for a commercial loan from Defendant Bank, but Bank did not grant the loan.[5] Samaritan subsequently obtained a loan from Bank One for a greater amount than they sought from Defendant Bank. (Compl. ¶ 7.)

Plaintiff 3M is an African-American-owned business located in Detroit. 3M applied for a commercial loan from Defendant Bank that was to be partially secured by a State of Michigan loan guaranty program, but Bank did not approve the loan under the program and required 3M's owner and his wife to secure the loan with a mortgage on their personal residence.[6] The loan terms require frequent renewal, and the interest rate has since increased. (Compl. ¶ 8.)

Plaintiff Phillip Peake was a Small Business Banking Officer ("SBBO") for Defendant Bank from May 2003 until April 2005. (Compl. ¶¶ 12, 13.) Peake is African-American, born and raised in Detroit, and still lives in the city. (Compl. ¶ 9.) As a result of his termination by the Bank, Peake filed an employment discrimination and retaliation lawsuit against Bank in June 2005 that is currently set for trial in October 2006 before the Hon. Denise Page Hood, Eastern District of Michigan. (Def.'s Mot. to Dismiss at 1.)

Defendant Bank is a wholly-owned subsidiary of Defendant NCC, and provides a variety of financial services throughout Michigan and the surrounding states. (Compl. ¶¶ 10-11.)

As an SBBO for Bank, Peake was responsible for generating applications for small

---

[5] Plaintiffs do not state when Samaritan applied for this loan.

[6] Plaintiffs do not state when 3M applied for this loan.

4

business commercial loans and closing loans approved by the Bank. (Compl. ¶ 14.) Most of the loans that Peake solicited were insured by a federal executive agency, the Small Business Administration ("SBA"), and were for less than $1 million. (Compl. ¶ 15.) The SBA is also the source of detailed lending statistics by geographic location and bank that both parties cite in their briefs.

Plaintiffs contend that Defendants have an unwritten policy of not making loans to businesses located in areas of Detroit that are predominantly African-American. While Peake was a loan officer for the Bank, he processed twelve loan applications totaling over $7.7 million for churches with predominantly African-American congregations that were denied by the Bank. (Compl. ¶¶ 26, 27.) All twelve of the churches that the Bank declined had subsequent loan applications approved by other banks in the Detroit Metropolitan Statistical Area. (Compl. ¶ 32.) Plaintiffs also note a number of SBA statistics for the years 2002-2004 to indicate that the overall percentage of SBA loans funded by Defendants to African-American-owned businesses and in the city of Detroit are small relative to the overall number of SBA loans Defendants funded. (Compl. ¶¶ 19-21.) Furthermore, Plaintiffs allege that the percentage of Defendants' branches located in Detroit is small relative to the number existing in the surrounding suburbs. (Compl. ¶¶ 22, 23.) In further support of this claim, Peake notes that his manager once recommended:

> [I]t is an SBBO's responsibility to target opportunities that have the highest chance of success . . . . Targeting doctor's offices, professional firms, all-star customers with high deposit dollars are all examples of ways Phil could target better opportunities. As indicated from the list of declined loans, Phil has three churches and a non-profit organization . . . . These types of businesses are not desirable based on National City criteria . . . . Phil and I have had several conversations regarding targeting the right

    types of businesses . . . .
(Compl. ¶ 28.)

## II. STANDARD OF REVIEW - RULE 12(b)(6) MOTION TO DISMISS

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a Complaint. In a light most favorable to Plaintiff, the court must assume that Plaintiff's factual allegations are true and determine whether the Complaint states a valid claim for relief. *See Albright v. Oliver*, 510 U.S. 266 (1994); *Bower v. Federal Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996); *Forest v. United States Postal Serv.*, 97 F.3d 137, 139 (6th Cir. 1996).

This standard of review "'requires more than the bare assertion of legal conclusions.'" *In re Sofamor Danek Group, Inc.*, 123 F.3d 394, 400 (6th Cir. 1997) (quoting *Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). The Complaint must include direct or indirect allegations "respecting all the material elements to sustain a recovery under *some* viable legal theory." *See In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citations omitted). A court should not grant a 12(b)(6) motion unless the movant shows "beyond doubt that the plaintiff can prove no set of facts in support of his claim." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

## III. ANALYSIS

### A. Claims Against Defendant NCC

Defendant NCC argues that all claims against it should be dismissed because Plaintiffs have not asserted any substantive allegations against NCC beyond it simply being a parent holding company of Defendant Bank. Although Plaintiffs' complaint does

not provide any detail of particular allegations against NCC itself, their response to Defendants' motion to dismiss makes several allegations sufficient to avoid that motion if the additional allegations are considered amendments to Plaintiffs' complaint. Specifically, Plaintiffs allege that NCC assisted Bank in creating a credit scoring matrix for churches, the underwriting decisions for the loans at issue were made by employees located in Indianapolis who may be NCC employees, and Plaintiff Peake received a letter from an NCC corporate employee in Cleveland on letterhead bearing Bank's name at the top.  (Pls.' Resp. at 9, 10.)  Such assertions indicate that NCC may be more than a mere holding company, and could be involved in setting policies for Bank which could lead to liability on NCC's behalf.

In support of the motion to dismiss, Defendants argue that "it is well-established that a pleading may not be amended in a response brief." *Jocham v. Tuscola Co.*, 239 F. Supp. 2d 714, 732 (E.D. Mich. 2003).  This Court does not find *Jocham* and the Seventh Circuit case it cites on this issue to be dispositive, however, given that both of those cases were at the summary judgment stage of the proceedings, rather than the motion to dismiss that this Court is considering here.  Furthermore, in the context of a defendant's motion for summary judgment, the Sixth Circuit has noted that "[t]his court in the past has treated legal theories first raised in the plaintiff's response to a motion for summary judgment as an implicit motion to amend the complaint when all of the relevant facts had previously been pled."  *Super Sulky, Inc. v. U.S. Trotting Ass'n*, 174 F.3d 733, 740 (6th Cir. 1999) (citing *Tefft v. Seward*, 689 F.2d 637, 639-40 (6th Cir.1982)).

Rule 15(a) of the Federal Rules of Civil Procedure states that a party must receive

leave of court to amend its pleadings once a responsive pleading has been served, but "leave shall be freely given when justice so requires." Where Plaintiffs are not attempting to plead new causes of action against Defendants, but are merely providing additional support to their initial pleading, this Court is inclined to allow an implicit motion to amend at this stage. With the additional allegations from Plaintiffs' response, Plaintiffs have made sufficient allegations against NCC to warrant a denial of NCC's motion for a complete dismissal at this stage of the proceedings.

## B. Defendants' Additional Information

In conjunction with their motion to dismiss, Defendants submitted exhibits that included underwriting documents from several of Plaintiffs' loan applications and data from the SBA that were not included in the complaint. Defendants seek to use the underwriting documents to show that the two-year statute of limitations under the FHA and ECOA has run as to plaintiffs JAT, Pleasant Hill and Samaritan. At oral argument, Plaintiffs conceded that these three claims are time-barred, so the issue is moot as to these pieces of additional information. As to the SBA statistics, Plaintiffs assert that by submitting additional documents that were not included in the complaint, Defendants converted the motion to dismiss to a motion for summary judgment (Pls.' Resp. to Defs.' Mot. at 10.) Defendants respond that a court may consider certain information that a plaintiff did not include in its complaint without transforming its motion to dismiss into a motion for summary judgment. Both parties cite to *Weiner v. Klais, Inc.*, 108 F.3d 86 (6th Cir. 1997) to support their arguments.

*Weiner* involved an ERISA dispute where the defendant included the plan documents, summary plan descriptions and other collateral agreements as exhibits to

its motion to dismiss. *Id.* at 89.  None of the documents were included in the plaintiff's complaint.  In general, "[m]atters outside of the pleadings are not to be considered by a court in ruling on a 12(b)(6) motion to dismiss." *Id.* at 88.  But the court also noted that

> a plaintiff is under no obligation to attach to his complaint documents upon which his action is based.  However, a defendant may introduce certain pertinent documents if the plaintiff fails to do so.  Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied.  Hence, the Seventh Circuit has held that "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim."

*Id.* at 89 (internal citations omitted).

In holding that the plan documents and summary plan descriptions could be considered part of the pleadings, the *Weiner* court noted that the plaintiff referred to the "plan" several times in the complaint, and the summaries contained identical information to what was in the plan itself.  The court refused to consider the collateral agreements, however, noting that they "were not mentioned directly or indirectly in the complaint." *Id.*

Defendants' information regarding SBA statistics is inappropriate for consideration.  Although Plaintiffs did mention certain SBA figures in the complaint, Defendants included completely different numbers with their motion.  By citing certain figures from the SBA, Plaintiffs did not open themselves up to the possibility that Defendants could raise any of the hundreds or thousands of other SBA statistics in response.  Analysis of competing figures such as this could be properly considered under a motion for summary judgment at a future date, but not under the motion to dismiss currently at bar.  For the above reasons, this Court will not consider Defendants' SBA statistics in ruling on this motion.

### C.  The Fair Housing Act

The FHA prohibits any person "engaging in residential real estate-related transactions" from discriminating on the basis of a number of characteristics, including race. 42 U.S.C. § 3605(a). Residential real estate-related transactions include "[t]he making or purchasing of loans or providing other financial assistance (A) for purchasing, constructing, improving, repairing, or maintaining a dwelling; or (B) secured by residential real estate." 42 U.S.C. § 3605(b)(1). A dwelling is defined as "any building, structure, or portion thereof which is occupied as, or designed or intended for occupancy as, a residence by one or more families. 42 U.S.C. § 3602(b).

Plaintiffs do not dispute that the transactions involving JAT, Body of Christ, Good Fight, Pleasant Hill, Samaritan and Peake did not involve a dwelling and were not secured by residential real estate, so the FHA claim is dismissed as to those plaintiffs. The loan for 3M, on the other hand, was allegedly secured by a first mortgage on the owners' personal residence, so Plaintiff 3M does have a valid claim under the FHA.

## D. The Equal Credit Opportunity Act

### 1. Statutory requirements for a claim under the ECOA

The ECOA states: "[i]t shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction – (1) on the basis of race [or] color . . . ." 15 U.S.C. § 1691(a)(1). "The term 'applicant' means any person who applies to a creditor directly for an extension, renewal, or continuation of credit . . . ." 15 U.S.C. § 1691a(b). Plaintiff Peake has not alleged that he ever applied for credit with Defendants, so his ECOA claim must be dismissed.[7]

---

[7]Plaintiff Peake asserts, despite the fact he is not an applicant for purposes of the ECOA, that the Act grants him a distinct claim for retaliation that is separate from his

Defendants assert that an applicant must also be "*denied* credit for reasons prohibited by ECOA" in order to have a valid claim under the Act. (Defs.' Mot. to Dismiss at 12, emphasis added.)  Neither the ECOA nor the cited case of *Barney v. Holzer Clinic, Ltd.*, 110 F.3d 1207 (6th Cir. 1997) list actual denial of credit as a specific requirement for an ECOA violation, however.  In fact, the only two cases this Court's research uncovered held that an actual denial is not necessary to have a violation. *Wilson v. Toussie*, 260 F. Supp. 2d 530. 540-41 (E.D.N.Y. 2003) (citing *Hargraves v. Capital City Mortgage Corp.*, 140 F. Supp. 2d 7, 22 (D.D.C. 2000)).  While complete denial would certainly be a *form* of prohibited discrimination, it could not be the *sole* possibility, as that interpretation would allow banks to discriminate by "approving" loans to disfavored groups but attaching higher interest rates, increased collateral requirements and more restrictive loan terms than those offered to other approved applicants. Therefore, the mere fact that 3M and Pleasant Hills' loans were approved and Good Faith withdrew their application with Bank do not mean that Bank's actions did not violate the ECOA.  Specifically, 3M has alleged that other applicants did not have to pledge personal real estate to secure a commercial loan with Bank (Compl. ¶ 8.) and Good Faith stated that it withdrew the application due to delay by Bank in the approval process (Compl. ¶ 5.)  Such delay, if proven, could constitute another form of hidden discrimination covered by the ECOA.  Therefore, this Court agrees with the previous holdings in *Wilson* and *Hargraves*, and finds that the remaining plaintiffs have

---

employment discrimination lawsuit pending before Judge Hood.  This Court's review of the ECOA failed to uncover any such provision, however, so dismissal of Peake's ECOA claim remains proper.

stated valid ECOA claims even if Defendants did not actually deny their applications.

### 2. Statute of limitations

All actions under the ECOA must be brought within "two years from the date of the occurrence of the violation." 15 U.S.C. § 1691e(f). As noted previously, Plaintiffs concede that the ECOA claims of JAT, Pleasant Hill and Samaritan are time-barred under this provision of the Act. Plaintiffs respond that the separate employment discrimination lawsuit that Peake filed on June 25, 2005 gave Defendants notice of the potential ECOA claims, however, because Peake's complaint in that lawsuit mentioned the alleged lending practices at issue here. Plaintiffs assert that this notice to Defendants tolled the applicable statute of limitations under the ECOA.

The argument that Peake's employment discrimination lawsuit tolls the applicable statute of limitations under the ECOA is without merit. Two of Plaintiffs' cited cases involved employment discrimination claims under the Age Discrimination in Employment Act ("ADEA"), which has a statutory requirement that plaintiffs must first file a complaint with the Equal Employment Opportunities Commission ("EEOC") in order to have a valid ADEA claim. *Foster v. Ruhrpumpen, Inc.*, 365 F.3d 1191 (10th Cir. 2004); *Howlett v. Holiday Inns, Inc.*, 49 F.3d 189 (6th Cir. 1995). Neither case involved any discussion of the ECOA or tolling an applicable statute of limitations under the ADEA that could be analogized to the issue at bar in this case. Furthermore, an employer is clearly put on notice of an applicable employment discrimination claim under the ADEA when a corresponding complaint is filed with the EEOC. Such notice is not so clear when, as in Plaintiffs' case, the first lawsuit alleges employment discrimination and the second involves unlawful lending practices. Therefore, this Court finds that *Foster* and *Howlett*

are not applicable here.

Plaintiffs' third case, *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345 (1983), held that filing a class action tolled the applicable statute of limitations for individual plaintiffs who were part of the class in a situation where the class certification was denied.  *Crown* is clearly not applicable here, as Plaintiffs were never part of a putative class that was eventually denied.  Outside of these cases, Plaintiffs do not provide any further authority for the assertion that the statute of limitations is tolled in this case, so the argument does not require further consideration.

### E. The Civil Rights Act

#### 1. Plaintiff Peake's claim

Peake has plead a valid claim under the Civil Rights Act, but no part of this claim has anything to do with the case at bar, which focuses on Defendants' alleged discriminatory lending practices.  A review of Plaintiffs' complaint where the allegations of action taken against Peake are described (Compl. ¶¶ 46-48.) confirms that his claims against Defendants are for employment-related matters.  Nowhere does Peake allege that he ever applied for a loan with Defendants.  Since Peake already has an employment discrimination lawsuit pending before another judge in the Eastern District of Michigan, these claims will be adequately addressed in that forum, and are dismissed from this case.

#### 2. Loan applicants' claims

Defendants argue that the remaining plaintiffs' CRA claims are merely an attempt to raise duplicative claims that would survive their failed claims under the FHA and

ECOA. In support of this assertion, however, Defendants simply restate the previously rejected argument that there can be no discrimination if a plaintiff's loan application was either approved or withdrawn. At the motion to dismiss stage, Plaintiffs must merely allege sufficient facts to show that they may have a valid claim under the specific law at issue. Defendants are correct that Plaintiffs must plead intentional discrimination in order to have a valid claim, *Gen. Bldg. Contractors Ass'n. v. Pennsylvania*, 458 U.S. 375 (1982), but Plaintiffs' complaint makes precisely this allegation, (Compl. ¶ 49.) which is sufficient to defeat a motion for summary judgment on this issue. Furthermore, Plaintiffs have alleged specific occurrences where Defendants conduct, if true, could constitute a violation under the CRA for unlawful discrimination.

Finally, Plaintiffs cite to *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002), although the case is not directly on point here. *Swierkiewicz* was an employment discrimination case where the Court held that the plaintiffs did not have to meet any heightened pleading standard in a Title VII employment discrimination case. Here, Defendants are not arguing that any standard besides the regular notice requirements of Rule 8(a) of the Federal Rules of Civil Procedure apply, so *Swierkiewicz* is inapplicable to this issue.

As this court has found that Plaintiffs have met their minimal burden to avoid a motion to dismiss on this point, Defendants' motion to dismiss the CRA claims is denied, with the exception of Peake's CRA claim.

## IV. CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment is GRANTED IN PART and DENIED IN PART. As a result, all of Plaintiff Peake's claims

are dismissed, and the following claims remain against Defendants: (i) an FRA claim by 3M, (ii) ECOA claims by Body of Christ, Good Fight and 3M, and (iii) CRA claims by JAT, Body of Christ, Good Fight, Pleasant Hill, Samaritan, and 3M.

SO ORDERED.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: October 27, 2006

I hereby certify that a copy of the foregoing document was served upon counsel of record on October 27, 2006, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager