UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAT, INC., et al.,

       Plaintiffs,

v.

NATIONAL CITY BANK OF THE MIDWEST
and NATIONAL CITY CORP.,

       Defendants.
_____/

Case No. 06-11937

Honorable Nancy G. Edmunds

**ORDER (1) DENYING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION [38], AND (2) DENYING AS MOOT DEFENDANTS' TWO MOTIONS TO STRIKE DECLARATIONS AND PLEADINGS [51, 68]**

Pending before this Court are three motions in this case. First, Plaintiffs'[1] moved for class certification on April 16, 2007. Then, on May 10, 2007, Defendants[2] moved to strike several declarations that Plaintiffs filed in support of their class certification motion. Finally, on June 12, 2007, Defendants moved to strike Plaintiffs' replies regarding the motion for class certification and four additional supporting declarations.

At this time, Plaintiffs are asking the Court to certify a class under Fed. R. Civ. P. 23(b)(2) for the limited purpose of determining whether Defendants engaged in a pattern or practice of lending discrimination, which would support injunctive relief if

---

[1] Used collectively, "Plaintiffs" refers to JAT, Inc., Body of Christ Christian Center, Good Fight of Faith Ministry, Pleasant Hill Baptist Church, Samaritan Baptist Church, and 3M Contracting, Inc.

[2] Used collectively, "Defendants" refers to National City Bank of the Midwest and National City Corporation.

Defendants are found liable for such conduct. Subsequently, Plaintiffs may seek to certify a class under Rule 23(b)(3) to settle the issue of monetary damages, assuming, of course, that Defendants are found liable in the first stage.

Plaintiffs' suit against Defendants asserts violations of several federal anti-discrimination laws related to Defendants' alleged policies of "redlining"[3] against African-American-owned businesses in the city of Detroit with regards to commercial loans. Specifically, Plaintiffs' claims involve (1) the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601-19, (2) the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §§ 1691-1691f, and (3) the Civil Rights Acts of 1866 and 1870 ("CRA"), 42 U.S.C. §§ 1981 and 1982.

Defendants assert that (1) Plaintiffs' motion fails to meet the four threshold requirements of Fed. R. Civ. P. 23(a), and (2) does not fall within the asserted class action category of Rule 23(b)(2) covering requests for injunctive relief because monetary damages predominate the equitable remedy Plaintiffs seek. Defendants' associated motions to strike argue that procedural and substantive defects preclude this Court from considering several of Plaintiffs' pleadings and declarations related to the instant motion for class certification.

For the reasons set forth below, the Court DENIES Plaintiffs' motion for class certification. Given that disposition of the primary motion before the Court, Defendants' two motions to strike are DENIED AS MOOT.

**I. FACTS**

---

[3]"Credit discrimination (usu[ally] unlawful discrimination) by a financial institution that refuses to make loans on properties in allegedly bad neighborhoods." *Black's Law Dictionary* 1283 (7th ed. 1999).

Plaintiffs are a group of churches with predominantly African American congregations and African-American-owned businesses that applied for commercial loans with Defendants to be secured by real estate or other property located in the City of Detroit. Plaintiffs' loan requests were either denied outright, or allegedly delayed in a purposeful fashion, thus forcing Plaintiffs to seek alternative financing from other local financial institutions.

## II. STANDARD OF REVIEW – MOTION FOR CLASS CERTIFICATION

Plaintiffs, as the party seeking to certify a class, bear the burden of showing Rule 23's requirements have been satisfied. *See Amchem Prods.,* 521 U.S. 591, 614 (1997); *In re Am. Med. Sys.,* 75 F.3d 1069, 1079 (6th Cir. 1996). As observed by the Sixth Circuit, "[t]he district court retains broad discretion in determining whether an action should be certified as a class action, and its decision, based upon the particular facts of the case, should not be overturned absent a showing of abuse of discretion." *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988). Nonetheless, the Court must "conduct a 'rigorous analysis' into whether the prerequisites of Rule 23 are met before certifying a class." *In re Am. Med. Sys.,* 75 F.3d at 1078-79 (citing *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982)).

In addressing a motion for class certification, courts do not examine the merits of the plaintiffs' underlying claims. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974). "A Rule 23 determination is wholly procedural and has nothing to do with whether a plaintiff will ultimately prevail on the substantive merits of its claim." *Little Caesar Enter., Inc. v. Smith*, 172 F.R.D. 236, 241 (E.D. Mich. 1997). Courts also assume that the substantive allegations of the complaint are true and that cognizable

claims are stated. *See Eisen*, 417 U.S. at 178. "Nonetheless, the Court must undertake an analysis of the issues and the nature of required proof at trial to determine whether the matters in dispute and the nature of plaintiffs' proofs are principally individual in nature or are susceptible of common proof equally applicable to all class members." *Little Caesar*, 172 F.R.D. at 241. "[W]hen a court is in doubt as to whether to certify a class action, it should err in favor of allowing a class." *Id.*

## III. ANALYSIS

In order for the Court to grant Plaintiffs' motion for class certification, they must demonstrate that the four requirements of Fed. R. Civ. P. 23(a)–numerosity, commonality, typicality and adequacy–are met, and that this case falls within one of the three categories of Rule 23(b). Here, Plaintiffs seek to confirm an initial class under Rule 23(b)(2), which allows class actions in cases where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Defendants argue that Plaintiffs have failed to meet any of the four Rule 23(a) requirements, and, alternatively, that this case does not fit within the parameters of Rule 23(b)(2).

### A. Rule 23(a) Requirements

Under Fed. R. Civ. P. 23(a)(1), Plaintiffs must first show that "the class is so numerous that joinder of all members is impracticable." It is true that "[t]he numerosity requirement is met when plaintiffs demonstrate that the number of potential class members is large, even if plaintiffs do not know the exact figure." *In re Consumers Power Co. Sec. Litig.*, 105 F.R.D. 583, 601 (E.D. Mich. 1985). Similarly, the Sixth

Circuit has "observed that '[t]here is no strict numerical test for determining impracticability of joinder.'" *Golden v. City of Columbus*, 404 F.3d 950, 965 (6th Cir. 2005) (quoting *In re Am. Med. Sys.*, 75 F.3d at 1079). That said, the plaintiffs must support their claim of numerosity with something more than mere speculation of the number of other individuals or entities that the alleged conduct affected. *Id.* at 965-66.

In *Golden*, the plaintiff was a tenant who brought a class action alleging that the City of Columbus acted illegally by shutting off her water, and that of other similarly-situated tenants, when the landlord or prior tenant failed to pay water bills for the rented property. To support her claim that Rule 23(a)(1)'s numerosity requirement was met, the plaintiff noted that "the number of renters in Columbus . . . is 150,000." (*Id.* at 966). In holding that the *Golden* plaintiff did not make a sufficient showing of numerosity, the Sixth Circuit stated:

> Golden must offer something more than bare speculation to link the gravamen of her claim for liability to the class of individuals she purports to represent. The gravamen of Golden's equal protection claim is that the City irrationally terminates certain tenants' water service. Golden does not allege that all tenants in Columbus are at risk of constitutional harm, only those whose predecessors or landlords are indebted to the City. Thus, reference to the total number of tenants in Columbus is not probative of the number of tenants reasonably likely to face the harm for which Golden seeks redress. Of course, the total number of tenants in Columbus is probative in the very limited sense that it represents the absolute maximum number of plaintiffs that could be in any class action brought by a tenant against the City. But the district court must engage in a "rigorous analysis" when evaluating the plaintiff's proof of numerosity, see *Falcon*, 457 U.S. at 161.

*Id.* (parallel citation omitted).

In the instant case, Plaintiffs posit that "there are tens of thousands of businesses, churches and mortgage applicants in the red lined zones, many of whom are likely to seek loans of the kind defendant makes in other parts of town." (Pl.'s Mot. for Class

5

Certification (hereinafter, "Pl.'s Mot.") at 15.) In support of this claim, Plaintiffs note that "[a]ccording to Census Bureau estimates, there were over 19,500 black owned businesses in Detroit in 2002. A commercial company lists some 4,381 Churches in the City. Given the City's 80%+ black population, it is fair to assume that there are thousands of black churches." (*Id.* at 8 (citations omitted).)

Defendants do not dispute Plaintiffs' statistic regarding the number of African-American-owned businesses in Detroit and, rightfully so, they also do not contest that it is logical to assume that there must be a significant number of churches with predominantly African American congregations in the City, due to the fact that a sizeable majority of Detroit's residents are members of that race. Instead, Defendants argue that Plaintiffs' statements do not speak to the operative question of whether any of these entities *applied for a loan with Defendants*.[4] Given the claims at issue in this case, Plaintiffs' speculation is insufficient to span the gap between general demographic statistics about Detroit and the bottom-line allegations that many other similarly-situated borrowers were denied credit by these particular Defendants.[5] Therefore, the Court

---

[4]Or would have applied for a loan, were it not for Defendants' failure to place more bank branches in the City of Detroit or adequately market its lending services there.

[5]To reiterate, parties may use statistics in discrimination cases, but the cited figures must be specific enough that they address the relevant comparisons applicable to the underlying dispute. *See Wards Cove Packing Co, Inc. v. Atonio*, 490 U.S. 642, 650-51 (1989) (holding that a general disparity between the percentages of minorities holding non-skilled cannery positions and those in skilled, non-cannery jobs was insufficient to support a claim of discrimination--the plaintiffs instead needed evidence of a disparity between the percentage of qualified minorities in the relevant labor market for non-cannery workers and the racial makeup of the individuals who actually held those positions). In addition to numerosity, statistical considerations may also be relevant in analyzing the commonality and typicality requirements.

6

finds that Plaintiffs have not satisfied the numerosity requirement of Rule 23(a)(1).

Putative class plaintiffs who fail to establish any one of the four initial requirements under Rule 23(a) are not entitled to class certification. *Golden*, 404 F.3d at 965. Therefore, consideration of the remaining three factors becomes irrelevant now that the Court has found Plaintiffs' proposed class lacks numerosity.[6]

### B. Rule 23(b) Categories

Even assuming, for sake of argument, that Plaintiffs had met all four of the Rule 23(a) requirements, they would still not be entitled to have the putative class certified under this category of available class actions. First of all, Plaintiffs recognize that in cases where monetary damages are the exclusive or predominant remedy sought, Rule 23(b)(2) does not provide a proper avenue for certifying the purported class. *Coleman v. Gen. Motors Acceptance Corp.*, 296 F.3d 443, 446 (6th Cir. 2002). There, the plaintiff alleged discriminatory lending practices under the ECOA and requested injunctive relief as well as monetary damages to compensate class members for being charged higher rates of interest on automobile loans than white consumers. Of concern to the *Coleman* court, as well as other federal circuit courts that have considered the question, are several issues, primarily that:

> the inclusion of [a monetary damages] claim [in a class action under Rule 23(b)(2)] undermines the assumption of homogeneity because each member of the class has an individual stake in the outcome of the litigation that could be protected by the opportunity to opt out of the class. Second, the individualized determinations necessary to calculate the amount of damages each class member would be entitled to eliminates the efficiencies created

---

[6]Nothing in this Order should be taken to indicate that the named plaintiffs in this case cannot pursue their own individual claims against Defendants following the denial of their request to proceed as a class.

7

>     by adjudicating these claims on a classwide basis.

*Id.* at 449 (internal citations omitted).  Furthermore, the Sixth Circuit also held in *Coleman* that "compensatory damages under the ECOA are not recoverable by a 23(b)(2) class." *Id.* at 447.

To be sure, certain Plaintiffs also have claims under the FHA and CRA, in addition to the ECOA, so not all of their compensatory damages are explicitly excluded under *Coleman*, especially since that court did recognize that a plaintiff could seek some monetary damages and still qualify under Rule 23(b)(2).  Regardless, Plaintiffs' attempt to argue that this Court should follow the reasoning in *Olden v. LaFarge Corp.*, 383, F.3d 495, 510-11 (6th Cir. 2004) rather than *Coleman* is unpersuasive.  While the *Olden* court noted that "[d]isputes over whether [an] action is primarily for injunctive . . . relief rather than a monetary award neither promote the disposition of the case on the merits nor represent a useful expenditure of energy," this statement was qualified by the assumption that all of the Rule 23(a) requirements were met, which is not the case here. *Id.* at 510.  Furthermore, the district court below in *Olden* had determined that the plaintiffs' case qualified as a class action under *both* Rule 23(b)(2) and (3), another factor that is not present in the instant dispute.  For these reasons, the Court finds *Olden* distinguishable and concludes that the reasoning in *Coleman* applies here.  Thus, Plaintiffs' requested class action fails for the additional reason that it does not fit within the category for Rule 23(b)(2) cases.

## IV. CONCLUSION

Being fully advised in the premises, having read the pleadings, and for the reasons set forth above, the Court hereby orders that Plaintiffs' motion for class certification is

DENIED and Defendants' two motions to strike are DENIED AS MOOT.

SO ORDERED.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: July 9, 2007

I hereby certify that a copy of the foregoing document was served upon counsel of record on July 9, 2007, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager